1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                   **WESTERN DIVISION**

11

12   SIMON DE ANDA, JR.,                    )        No. CV 10-2957-PLA
                                            )
13                     Plaintiff,           )
                                            )        **MEMORANDUM OPINION AND ORDER**
14            v.                            )
                                            )
15   MICHAEL J. ASTRUE,                     )
     COMMISSIONER OF SOCIAL                 )
16   SECURITY ADMINISTRATION,               )
                                            )
17                     Defendant.           )
     _____)

18

19                                 **I.**

20                            **PROCEEDINGS**

21          Plaintiff filed this action on April 23, 2010, seeking review of the Commissioner's denial of

22   his applications for Disability Insurance Benefits and Supplemental Security Income payments.

23   The parties filed Consents to proceed before the undersigned Magistrate Judge on May 6, 2010,

24   and May 12, 2010.  The parties filed a Joint Stipulation on January 4, 2011, that addresses their

25   positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation

26   under submission without oral argument.

27   /

28   /

## II.

## BACKGROUND

Plaintiff was born on July 13, 1958.  [Administrative Record ("AR") at 81, 132.]  He has a high school education, has received vocational training in welding, and has past relevant work experience as a welder, machine operator, night dispatcher, and manager.  [AR at 35-36, 41-45, 140, 144, 168.]

On February 25, 2009, plaintiff protectively filed his applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he has been unable to work since February 1, 2005, due to lower back problems and anemia.  [AR at 14, 81-82, 111-21, 132-34, 138-45.]  After plaintiff's applications were denied initially, he requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 83-89.]  A hearing was held on August 4, 2009, at which time plaintiff appeared without counsel and testified on his own behalf.  A vocational expert also testified.  [AR at 24-80.]  On August 27, 2009, the ALJ found plaintiff not disabled.  [AR at 11-21.]  When the Appeals Council denied plaintiff's request for review of the hearing decision on February 16, 2010, the ALJ's decision became the final decision of the Commissioner.  [AR at 1-4.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

1    as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

2    Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

3    must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

4    53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

5

6                                              **IV.**

7                          **THE EVALUATION OF DISABILITY**

8            Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

9    to engage in any substantial gainful activity owing to a physical or mental impairment that is

10   expected to result in death or which has lasted or is expected to last for a continuous period of at

11   least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

12

13   **A.      THE FIVE-STEP EVALUATION PROCESS**

14           The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

15   whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

16   828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

17   determine whether the claimant is currently engaged in substantial gainful activity; if so, the

18   claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

19   substantial gainful activity, the second step requires the Commissioner to determine whether the

20   claimant has a "severe" impairment or combination of impairments significantly limiting his ability

21   to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

22   If the claimant has a "severe" impairment or combination of impairments, the third step requires

23   the Commissioner to determine whether the impairment or combination of impairments meets or

24   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

25   Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

26   If the claimant's impairment or combination of impairments does not meet or equal an impairment

27   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

28   sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

1    and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

2    past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

3    case of disability is established.  The Commissioner then bears the burden of establishing that the

4    claimant is not disabled, because he can perform other substantial gainful work available in the

5    national economy.   The determination of this issue comprises the fifth and final step in the

6    sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d

7    at 1257.

8

9    **B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

10            In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial

11   gainful activity since February 1, 2005, the alleged onset date of disability.[1]  [AR at 16.]  At step

12   two, the ALJ concluded that plaintiff "has the following severe impairments: history of syncope and

13   dizzy spells, otitis media of the left ear, and lower back pain with moderate to severe osteoarthritis

14   at L5-S1."  [Id.]  At step three, the ALJ concluded that plaintiff's impairments do not meet or equal

15   any of the impairments in the Listing.  [AR at 17.]  The ALJ further found that plaintiff retained the

16   residual functional capacity ("RFC")[2] to perform light work,[3] except that plaintiff cannot climb

17   _____

18       [1]   The ALJ also determined that plaintiff is insured for Disability Insurance Benefits purposes
     through December 31, 2009.  [AR at 16.]
19
         [2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
20   Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

21       [3]   "Light work" is defined as work that involves "lifting no more than 20 pounds at a time with
     frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may
22   be very little, a job is in this category when it requires a good deal of walking or standing, or when
     it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be
23   considered capable of performing a full or wide range of light work, [a claimant] must have the
24   ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).
             The Court observes that the ALJ in a later part of his decision seemed to characterize
25   plaintiff's exertional capacity as sedentary, rather than light.  [See AR at 20.]  Sedentary work is
     defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or
26   carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as
27   one which involves sitting, a certain amount of walking and standing is often necessary in carrying
     out job duties.  Jobs are sedentary if walking and standing are required occasionally and other
28                                                                                          (continued...)

1   ladders, ropes, or scaffolds; can only occasionally climb ramps or stairs, balance, stoop, kneel,

2   crouch, and crawl; must be able to use a hand-held assistive device for prolonged ambulation; and

3   cannot perform work that involves "concentrated exposure to hazardous machinery, unprotected

4   heights, or other high risk, hazardous or unsafe conditions." [AR at 17.]  At step four, the ALJ

5   concluded, relying on the vocational expert's testimony, that plaintiff could perform his past work

6   as a dispatcher.  [AR at 19.]  Alternatively, the ALJ continued his analysis to step five and

7   concluded, relying on the vocational expert's testimony and the Medical Vocational Rules as a

8   framework,[4] that plaintiff was able to perform other work existing in substantial numbers in the

9   national economy requiring only a sedentary level of exertion. [AR at 19-20.]  However, the ALJ

10  also found that plaintiff could only perform other work until July 13, 2008, when plaintiff reached

11  his 50th birthday, at which time the Medical Vocational Rules would require a finding that plaintiff

12  was disabled.  [AR at 20, citing Medical Vocational Rule § 201.14.]  Nonetheless, the ALJ

13  determined that the step-five application of Medical Vocational Rule § 201.14 was "moot," as the

14  ALJ concluded that plaintiff was capable of performing his past relevant work at step four.  [Id.]

15  Accordingly, the ALJ found plaintiff not disabled.  [AR at 20-21.]

16

17                                          **V.**

18                              **THE ALJ'S DECISION**

19          Plaintiff contends that the ALJ erred in finding plaintiff able to perform his past relevant

20  work.  [Joint Stipulation ("JS") at 4.]  As set forth below, the Court agrees with plaintiff and

21  remands the matter for further proceedings.

22  /

23  /

24

25      [3](...continued)
    sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

26
    [4]    The Medical-Vocational Guidelines, also known as "the grids," are a table system for
27  determining at step five of the sequential evaluation whether a claimant's impairments are
    disabling. See 20 C.F.R., Pt. 404, Subpt. P, App. 2; Lounsbury v. Barnhart, 468 F.3d 1111, 1114
28  (9th Cir. 2006).

1 **PAST RELEVANT WORK**

2      Plaintiff contends that the ALJ erred at step four of the sequential evaluation in concluding

3 that plaintiff could perform his past relevant work as a dispatcher.  [JS at 4-11.]  Specifically,

4 plaintiff contends that the ALJ erroneously relied on the vocational expert's testimony

5 characterizing plaintiff's past work as that of a "Dispatcher, Motor Vehicle" under Dictionary of

6 Occupational Titles ("DOT") No. 249.167-014, when plaintiff's testimony instead established that

7 his past dispatcher work was that of a "Receiver-Dispatcher" under DOT No. 239.367-022, 1991

8 WL 672227.  [Id.]  Plaintiff further asserts that the difference between these two jobs is "material"

9 as plaintiff's limitations prevent him from performing the full range of light work required of his past

10 dispatcher job under DOT No. 239.367-022 either as he actually performed the job or as it is

11 generally performed according to the DOT.  [JS at 10-11.]  Accordingly, plaintiff contends that it

12 is necessary to continue to step five of the sequential evaluation and that he is thus entitled to a

13 finding that he has been disabled since his 50th birthday on July 13, 2008, under Medical

14 Vocational Rule § 201.14.  [JS at 10-11, citing AR at 19-20 (the ALJ's alternative step-five

15 finding).]

16      At step four, the ALJ must determine whether plaintiff's RFC allows him to return to his past

17 relevant work.  Lester, 81 F.3d at 828, n.5; 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

18 Plaintiff has the burden of establishing that he is incapable of performing his past relevant work.

19 20 C.F.R. §§ 404.1512, 416.912; Barnhart v. Thomas, 540 U.S. 20, 25, 124 S.Ct. 376, 157

20 L.Ed.2d 333 (2003).  However, the ALJ must make findings of fact regarding plaintiff's RFC, the

21 physical and mental demands and job duties required of plaintiff's past work, and whether plaintiff

22 can return to his past relevant work "either as actually performed or as generally performed in the

23 national economy," given plaintiff's limitations.  Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir.

24 2002); see Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  A claimant is typically the

25 primary source for determining what past jobs the claimant has performed, as well as how those

26 /

27 /

28 /

1  jobs were actually performed.  See Social Security Ruling[5] 82-62 ("The claimant is the primary

2  source for vocational documentation, and statements by the claimant regarding past work are

3  generally sufficient for determining the skill level[,] exertional demands and nonexertional demands

4  of such work.").  A claimant's statements concerning his past work can come from a Vocational

5  Report (SSA-3369 form)[6] properly completed by the claimant, or from the claimant's testimony at

6  an administrative hearing.  See Pinto, 249 F.3d at 845; SSR 82-42; SSR 82-61.  When

7  determining how a claimant's past job is generally performed, the ALJ can rely on the descriptions

8  given by the Dictionary of Occupational Titles ("DOT") or a vocational expert.  Johnson v. Shalala,

9  60 F.3d 1428, 1435 (9th Cir. 1995).

10  A claimant is entitled to challenge an ALJ's classification of his past relevant work under

11  the DOT.  See Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986); see also, e.g., Goodenow-

12  Boatsman v. Apfel, 2001 WL 253200, at *7 (N.D. Cal. Feb. 27, 2001) ("plaintiff may challenge the

13  ALJ's classification of [his] past relevant work according to the DOT").  As the Administration's

14  rulings recognize, "[a] particular job may or may not be identifiable in authoritative reference

15  materials.  The claimant is in the best position to describe just what he or she did in [past relevant

16  work], how it was done, what exertion was involved, what skilled or semiskilled work activities were

17  involved, etc.  Neither an occupational title by itself nor a skeleton description is sufficient."  SSR

18  82-41.  If the ALJ "incorrectly categorize[s] [a claimant's] occupation under [a DOT] job title ...,

19  then 'the description applicable to that category is irrelevant to the determination of the exertional

20  capacities required in [his] former occupation.'"  Villa, 797 F.2d at 798 (quoting Tingle v. Heckler,

21  627 F.Supp. 544, 545 (S.D. Miss. 1986)).

22  Plaintiff testified at the hearing concerning his past work experience as a welder and

23  "dispatcher at a tow yard."  [AR at 41-45.]  In describing his dispatcher work, plaintiff explained that

24

25  [5]  Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute
Social Security Administration interpretations of the statute it administers and of its own
26  regulations," and are given deference "unless they are plainly erroneous or inconsistent with the
Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

27

28  [6]  The SSA-3369 (i.e., Work History Report) form is available on the Administration's website
at http://www.socialsecurity.gov/online/.

1  he worked in a "dispatch center," where he would "mostly answer phones and just send out the

2  drivers to where the calls come in ....  We work for AAA.  ... Calls come in, and we send ... the

3  guys out, and make sure they get there and stuff like that." [AR at 43.]  Plaintiff explained that he

4  would use telephones, rather than computers, and described his work as "really hectic" and "real

5  stressful" due to "the volume that comes in of the calls." [AR at 42-43.]  He also explained that he

6  was required to "sit[] constantly" at his job to answer the phones [AR at 42, 44], and that he was

7  unable to continue his dispatcher work because his back problem makes it difficult for him to sit

8  for prolonged periods of time.  [AR at 42, 71-72.]  Plaintiff did not complete a Vocational Report

9  (SSA-3369 form) to describe in detail the duties of his past work.[7]

10  At the hearing, the vocational expert classified plaintiff's past dispatcher work under DOT

11  No. 249.167-014. [AR at 67.]  In response to a hypothetical question, in which the ALJ described

12  a person with the same limitations outlined in the RFC determination described above, but with

13  the additional limitation of being limited to a total of two hours of standing and/or walking in an

14  eight-hour day, the vocational expert asserted that plaintiff could perform his past work as a

15  dispatcher as he actually performed it or as it is generally performed according the DOT.[8]  Notably,

16  although the vocational expert correctly stated that DOT No. 249.167-014 is a sedentary job [AR

17  at 67], she did not specifically state at what exertional level plaintiff actually performed his

18  dispatcher job.  [See AR at 67-69.]  The vocational expert further testified that under the same

19  hypothetical, plaintiff could perform a number of sedentary jobs existing in substantial numbers

20  in the national economy. [AR at 70.]  The vocational expert also clarified that a "two-hour standing

21  and walking restriction" made the hypothetical limitations described by the ALJ "more sedentary

22

23  [7]  The record contains a "Claimant's Work Background" form, apparently completed by
24  plaintiff, in which plaintiff listed his past jobs and provided very brief descriptions concerning the
   duties he performed (i.e., "night dispatcher night manager," "welder," and "machine operator").
25  [AR at 168.] The record also contains a "Disability Report - Adult Form SSA-3368," which provides
   a more detailed description concerning plaintiff's work as a welder, but does not include any
26  information about his work as a dispatcher.  [See AR at 140-41.]

27  [8]  The vocational expert classified plaintiff's past welding work as a "combination welder"
   under DOT No. 819.384-010, and stated that plaintiff could not perform his past welder work given
28  the hypothetical limitations described by the ALJ.  [See AR at 66, 69.]

8

1    than light." [AR at 69-70.] In the decision, the ALJ relied on the vocational expert's testimony that

2    plaintiff's past work as a dispatcher was properly defined by DOT No. 249.167-014 and that

3    plaintiff could perform that job, despite his limitations, both as he actually performed it and as it

4    is generally performed in the national economy. [See AR at 19.]

5         The Court agrees with plaintiff's contentions that the vocational expert improperly

6    characterized his past dispatcher work under DOT No. 249.167-014, and that the ALJ erred in

7    relying on the vocational expert's testimony in finding plaintiff able to perform his past relevant

8    work. The DOT provides the following definition for DOT No. 249.167-014, "Dispatcher, Motor

9    Vehicle":

10                    Assigns motor vehicles and drivers for conveyance of freight or
              passengers: Compiles list of available vehicles. Assigns vehicles
11            according to factors, such as length and purpose of trip, freight or
              passenger requirements, and preference of user. Issues keys, record
12            sheets, and credentials to drivers. Records time of departure,
              destination, cargo, and expected time of return. Investigates overdue
13            vehicles. Directs activities of drivers, using two-way radio. May
              confer with customers to expedite or locate missing, misrouted,
14            delayed, or damaged merchandise. May maintain record of mileage,
              fuel used, repairs made, and other expenses. May establish service
15            or delivery routes. May issue equipment to drivers, such as
              handtrucks, dollies, and blankets. May assign helpers to drivers. May
16            be designated according to type of motor vehicle dispatched as
              Dispatcher, Automobile Rental (automotive ser.); Dispatcher, Tow
17            Truck (automotive ser.).

18   DOT No. 249.167-014. This job is classified as sedentary work under the DOT. Id. The DOT also

19   provides the following definition for DOT No. 239.367-022, "Receiver-Dispatcher":

20                    Receives and records requests for emergency road service from
              automobile club members, and dispatches tow truck or service truck
21            to stranded vehicle: Answers telephone and obtains and records on
              road service card such information as name of club member, location
22            of disabled vehicle, and nature of vehicle malfunction. Routes card to
              dispatch station, or relays information to service station or tow truck
23            in motorist's vicinity, using telephone or two-way radio. May locate
              site of stranded vehicle, using maps. May maintain file of road service
24            cards.

25   DOT No. 239.367-022. This job is classified as light work under the DOT. Id. Plaintiff's

26   description of his work for AAA (i.e., the American Automobile Association, an automobile club that

27   offers roadside assistance services), that he would answer telephone calls in a dispatch center,

28   send tow truck drivers to customers, and make sure that the drivers arrived, closely mirrors the

1  Receiver-Dispatcher job described at DOT No. 239.367-022. The definition provided at DOT No.

2  239.367-022 is also much closure to how plaintiff described his job duties than DOT No. 249.167-

3  014. Specifically, plaintiff did not state that he assigned vehicles and drivers for the conveyance

4  of freight or passengers according to factors such as length and purpose of trip, freight or

5  passenger requirements, and preferences of users; that he conferred with customers to expedite

6  or locate missing, misrouted, delayed or damaged merchandise; that he maintained records

7  concerning mileage, fuel used, repairs made, or other expenses; or that he assigned to drivers

8  helpers or equipment such as handtrucks, dollies, and blankets, which are all duties required in

9  DOT No. 249.167-014. Accordingly, the vocational expert and the ALJ incorrectly characterized

10  plaintiff's past dispatcher work, and thus the DOT description relied on by the vocational expert

11  and the ALJ in determining the job duties and exertional capacities required of plaintiff's dispatcher

12  work is inapplicable. See Villa, 797 F.2d at 798. As such, the ALJ's conclusion that plaintiff could

13  perform his past dispatcher work -- which the ALJ reached by relying on a job that requires

14  different duties than those described by plaintiff and that requires only sedentary work (as is

15  required by the Dispatcher, Motor Vehicle job (DOT No. 249.167-014)), rather than light work (as

16  is required by the Receiver-Dispatcher job (DOT No. 239.367-022)) -- is not supported by

17  substantial evidence. See Pinto, 249 F.3d at 844 (although the claimant has the burden of proof

18  at step four, "the ALJ still has a duty to make the requisite factual findings to support his

19  conclusion" as to whether the claimant can perform his past relevant work); see 20 C.F.R. §§

20  404.1520, 416.920. See also, e.g., Prieto v. Astrue, 2008 WL 4196640, at *6 (C.D. Cal. Sept. 3,

21  2008) (reversing and remanding the ALJ's step four finding that plaintiff could perform past

22  relevant work, where the ALJ relied on a job defined in the DOT that involved a lighter exertional

23  level and different job duties than plaintiff's description of his past work); Rawlings v. Astrue, 318

24  Fed.Appx. 593, 595 (9th Cir. 2009) (reversing and remanding ALJ's decision that plaintiff could

25  perform his past work, where the ALJ erred in relying on the vocational expert's testimony that

26  incorrectly characterized plaintiff's past work under the DOT) (citable for its persuasive value

27  pursuant to Ninth Circuit Rule 36-3).

28  /

1    At the same time, however, the Court cannot conclude, as plaintiff urges [JS at 11], that a

2    reversal of the ALJ's decision for an award of benefits is called for here.

3              "[W]hen the record provides persuasive proof of disability and a
              remand for further evidentiary proceedings would serve no purpose,"
4              it is appropriate for a court to reverse an ALJ's decision and order the
              payment of benefits.  By contrast, "[w]hen there are gaps in the
5              administrative record or the ALJ has applied an improper legal
              standard," a case should be remanded to the Commissioner for the
6              further development of the evidence.

7    Hartnett v. Apfel, 21 F.Supp.2d 217, 221 (E.D.N.Y. 1998) (quoting Parker v. Harris, 626 F.2d 225,

8    235 (2d Cir. 1980)).  Here, the ALJ erred in relying on the vocational expert's testimony that

9    plaintiff could perform his past dispatcher work because the vocational expert relied on a DOT job

10   description that did not adequately describe plaintiff's past work.  That error, however, does not

11   preclude the possibility that the ALJ could have properly found plaintiff able to perform his past

12   work if the ALJ and the vocational expert had relied on a DOT job description that accurately

13   describes plaintiff's dispatcher work -- i.e., DOT No. 239.367-022.[9]  Accordingly, the Court finds

14   remand and further development of the evidence necessary on this issue.  See Pfitzner v. Apfel,

15   169 F.3d 566, 569 (8th Cir. 1999) (remanding the ALJ's decision for failing to properly identify a

16   DOT job that represented plaintiff's past work, but noting that "the ALJ's decision may not change

17   after properly considering" plaintiff's ability to perform his past relevant work); Tingle, 627 F.Supp.

18   at 545 (remanding for a factual determination as to whether plaintiff's job duties fit the job title

19   relied on by the ALJ, and instructing that "[i]f it is found that Plaintiff's work included duties not

20   included in the [job] description ... [relied on by the ALJ], then the Secretary should further

21   determine whether Plaintiff's former work was in fact sedentary in nature and thus within his

22   residual functional capacity.").

23   /

24   /

25   _____

26        [9]   Plaintiff contends that the manner in which he actually performed his job was consistent
     with a light (rather than a sedentary) level of exertion, "as a result of the constant stress and strain
27   of maintaining a production rate pace handling requests for emergency road service." [JS at 10.]
     The Court does not decide the exertional level of plaintiff's past work, as such a factual finding
28   should be resolved by the ALJ with, if necessary, the assistance of a vocational expert.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order for the ALJ to reconsider whether plaintiff is able to perform his past relevant work.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 24, 2011

_____
                    PAUL L. ABRAMS
                    UNITED STATES MAGISTRATE JUDGE